# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | | |
|---|---|---|
| **NETAPP, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CASE NO. 6:25-cv-02130** |
| | § | |
| **JÓN THORGRÍMUR** | § | |
| **STEFÁNSSON,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff NetApp, Inc. ("NetApp") files this Response to Defendant Jón Thorgrímur Stefánsson's ("Stefánsson") Motion to Dismiss (the "Motion") and shows the Court as follows:

## INTRODUCTION

Defendant Stefánsson asserts meritless arguments to evade accountability in Florida, but the undisputed facts show that this is the proper forum to adjudicate NetApp's claims. *First*, Stefánsson was personally served in Florida at his home *twice*. *Second*, all of the conduct that gave rise to this dispute happened since early 2025, while Stefánsson worked for U.S.-based NetApp, Inc. in Orlando, Florida. *Third*, NetApp sued Stefánsson under the Proprietary Information and Inventions Agreement, not the separate Icelandic Employment Agreement, which was formally terminated in writing "by mutual consent" in 2022 when he stopped working in Iceland for NetApp's Iceland subsidiary. *Fourth*, the PIIA requires the application of Florida law to this dispute and expressly survives the termination of Stefánsson's employment in Iceland with NetApp's Iceland subsidiary. These facts alone establish proper jurisdiction and venue in Florida.

The uncontroverted termination of Stefánsson's employment in Iceland that occurred prior to all alleged misconduct that gave rise to this action is *fatal* to Stefánsson's assertion of mandatory venue in Iceland. In fact, Stefánsson worked in Florida for an entirely different entity, NetApp, Inc., and the *tortious acts* underlying NetApp's trade secret claims occurred while Stefánsson was working for NetApp, Inc. in Florida. In short, this dispute relates in no way to Stefánsson's

1

employment in Iceland under the Icelandic Employment Agreement, so Stefánsson cannot rely upon that agreement's forum selection clause.

Because the undisputed facts demonstrate that venue and personal jurisdiction in Florida are appropriate, Stefánsson's Motion should be denied.

### BACKGROUND

Contrary to Stefánsson's assertions otherwise, all the events giving rise to this dispute occurred while Stefánsson was an employee of NetApp in Florida. In 2017, Stefánsson signed an employment agreement with NetApp's Icelandic subsidiary. Dkt. No. 37.2 ("Terminated EA"). Stefánsson also entered the Proprietary Information and Inventions Agreement with NetApp, Inc. Dkt. No. 1-2 ("PIIA"). The PIIA expressly provides that it survives the termination of Stefánsson's employment in Iceland and transfer to another NetApp subsidiary. *See* PIIA, Preamble. In spring 2022, Stefánsson informed Human Resources that he was "pretty fed up" working most nights and had job offers from several U.S.-based companies. Dkt. No. 41-2 ("Stefánsson Email"). Stefánsson requested a transfer to Florida, along with "a promotion to SVP and a big salary pump." *Id*. As part of Stefánsson's move to Florida and his new at-will employment with NetApp, Inc., Stefánsson and NetApp entered an agreement to mutually terminate Stefánsson's employment with NetApp's Iceland subsidiary. Dkt. No. 37-4 ("Release").[1] In fall 2022, Stefánsson purchased a home in Orlando, Florida,

---

[1] No new Employment Agreement was entered because Stefánsson became an at-will employee in the United States.

2

moved his wife and children to Florida, and began to work in Florida for U.S.-based NetApp, Inc.

Stefánsson then lived and worked in Florida for U.S.-based NetApp, Inc. for nearly three years. While still employed by NetApp, Inc. and living and working in Orlando, Florida, Stefánsson began to form a competing company—"Red Stapler"—and used NetApp's trade secrets and other confidential and proprietary information to develop a competing product. NetApp sued Stefánsson on this basis and personally served Stefánsson twice at his Orlando home. Dkt. Nos. 11, 14.

Put simply, the breaches and torts underlying this dispute occurred while Stefánsson worked in Florida where he lived with his family. NetApp sued Stefánsson under the PIIA, which requires Florida law. PIIA, § O. And Stefánsson's arguments against venue and jurisdiction in Florida fail because (1) Stefánsson was personally served in Florida, (2) the Icelandic Employment Agreement was a local employment agreement governing his employment in Iceland and was terminated by mutual consent, and (3) Stefánsson's misconduct giving rise to this action all happened subsequent to the termination of the Icelandic Employment Agreement.

## ARGUMENT

### I.   This Court has personal jurisdiction over Stefánsson.

This Court indisputably has personal jurisdiction over Stefánsson for three reasons: ***first***, tag jurisdiction: Stefánsson was personally served twice at his Florida home; ***second***, general jurisdiction: Stefánsson was a Florida resident at all times relevant to this dispute and carried on substantial activities in Florida;

***third***, specific jurisdiction: Stefánsson registered a business in Florida, was employed by NetApp in Florida at all times relevant to this dispute, and Stefánsson's breaches and torts were committed while he worked in Florida.

NetApp must establish, and has established, a prima facie case of personal jurisdiction, which is "enough evidence to withstand a motion for directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006) (cleaned up). Where a "complaint and supporting affidavits and documents conflict with the Defendants' affidavits, [the court] must construe all reasonable inferences in favor of the plaintiff[.]" *Id.* (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002).

## A.    This Court has tag jurisdiction over Stefánsson.

This Court indisputably has personal jurisdiction over Stefánsson because he was ***personally served*** with service of process in Florida at his home twice. Dkts. 11, 14; *see Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 (1990) (finding jurisdiction over a nonresident defendant who was served with a petition in the forum state); *see also Keveloh v. Carter*, 699 So. 2d 285, 288 (Fla. 5th DCA 1997) ("Florida courts have personal jurisdiction over nonresidents when that nonresident is properly served with service of process while voluntarily present in the state."). Tag jurisdiction indisputably comports with the Due Process Clause. *See Burnham*, 495 U.S. 604 at 619 ("[J]urisdiction based on physical presence alone constitutes due process . . . ."). For this reason alone, this Court indisputably has personal jurisdiction over Stefánsson.

4

Yet Stefánsson ***wholly ignores*** this basis for jurisdiction. By failing to address tag jurisdiction, Stefánsson tacitly concedes this issue.

**B.      This Court has general jurisdiction over Stefánsson.**

Florida also has general jurisdiction over Stefánsson because, at all times relevant to this dispute, Stefánsson lived and worked in Orlando, Florida.

After informing Human Resources that he was considering a move to the United States, late in 2022, Stefánsson voluntarily moved to Florida with his family to work for NetApp, Inc. and purchased a $1.425 million home in Orlando. *See* Dkt. No. 41-1. Stefánsson only sold his Orlando home ***last month***. He also incorporated a business in Florida. Ex. A ("Krummi Registration"). Stefánsson contends that he never intended to establish residence in Florida, but all the facts belie this. Because all the acts underlying NetApp's claims occurred while Stefánsson was a Florida ***resident***, Florida has general jurisdiction over him. *Subic Bay Marine Exploratorium, Inc. v. JV China, Inc.*, 257 So.3d 1139, 1141 (5th DCA 2018) (recognizing that "Florida residents are subject to the general jurisdiction of Florida courts" (citing *Patten v. Mokher*, 134 Fla. 433, 436 (1938))).

Aside from this, Stefánsson is subject to general jurisdiction because he is "engaged in substantial and not isolated activity within this state[.]" Florida Statutes § 48.193(2).[2] This requires "continuous and systematic" contact, and contacts are assessed over the years prior to suit. *Dean v. Johns,* 789 So. 2d 1072,

---

[2] Although NetApp miscited this statute in the Complaint, it plainly recited the elements of this statute, so it pleaded this basis of jurisdiction.

1077–78 (Fla. 1st DCA 2001). Stefánsson moved to Florida, worked and earned wages in Florida, owned real property in Florida, lived in Florida with his family for **years**, and incorporated a business in Florida, so general jurisdiction exists. *See* Ex. B ("Florida Paystubs"); *see Caicedo v. Food for Life Experience, Inc.*, No. 1:13-cv-00258-GRJ, 2014 U.S. Dist. LEXIS 90312, at *18 (N.D. Fla. July 2, 2014). General jurisdiction satisfies due process. *See Dean,* 789 So. 2d at 1077.

### C.    This Court has specific jurisdiction over Stefánsson.

Assuming Stefánsson was not a Florida resident (he was), the Court must engage in a "two-step analysis to determine whether there is personal jurisdiction. . . ." *Valle v. Trivago GmbH*, 56 F.4th 1265, 1272 (11th Cir. 2022). "First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, . . . it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). NetApp satisfies both prongs.

### 1. Stefánsson engaged in business in Florida.

Under Florida Statute § 48.193(1)(a)(1), the activities of the person "must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So.2d 561, 564 (S.Ct. Fla. 1975). Stefánsson worked for NetApp from his Florida home office, earned wages in Florida for nearly three years, and registered a business in Florida. *See Sculptchair,* 94 F.3d at 628 (personal jurisdiction exists even where

"sales efforts were sporadic at best and the revenue generated therefrom was relatively insignificant"). Stefánsson's activities show a course of business activity in Florida.

### 2. Stefánsson's torts occurred in Florida.

In addition, Stefánsson began misappropriating NetApp's trade secrets at least in May 2025 (if not earlier), at which time Stefánsson indisputably lived in Florida and worked in Florida for NetApp. This is sufficient for jurisdiction under Florida Statute § 48.193(1)(a)(2), which provides that jurisdiction exists over a defendant who commits a tortious act within Florida. *See Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (drawing inference that tort was committed in Florida because complaint alleged that defendant was Florida resident).

### 3. Stefánsson's breaches occurred in Florida.

Stefánsson chose to move to Florida while remaining bound to the PIIA, and Stefánsson breached the PIIA while living and earning wages in Florida. The PIIA also requires Florida law because that is where Stefánsson breached. PIIA, ¶ O. The PIIA requires Stefánsson's adherence in Florida, which satisfies section 48.193(1)(a)(7). *See Advanced Bodycare Sols. LLC v. Thione Int'l, Inc.*, 514 F. Supp. 2d 1326, 1330 (S.D. Fla. 2007) (explaining defendant's choice of Florida contacts rendered defendant susceptible to suit in Florida).

### D.    The exercise of jurisdiction comports with due process.

This Court does not need to extensively analyze whether jurisdiction comports with due process because (1) tag jurisdiction exists, and (2) Stefánsson

was a Florida resident and is engaged in substantial activities in Florida. *See Dean*, 789 So. 2d at 1077 (satisfying general jurisdiction satisfies due process). Nonetheless, NetApp's other bases for jurisdiction comport with due process. The factors courts consider are: "whether (1) the plaintiff's claims arise out of or relate to one of the defendant's contacts with the forum state; (2) the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of fair play and substantial justice." *Valle*, 56 F.4th at 1275. "[A] defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Maurer Rides USA, Inc. v. Beijing Shibaolai Amusement Equip. Co.*, No. 6:10-cv-1718-Orl-37KRS, 2014 U.S. Dist. LEXIS 100989, at *11 (M.D. Fla. July 23, 2014) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

*First*, this Court has tag jurisdiction, Dkt. Nos. 11, 14, which indisputably comports with the Due Process Clause. *See Burnham*, 495 U.S. 604 at 619.

*Second*, as to NetApp's specific jurisdiction bases, all prongs of the of due-process analysis are satisfied. Regarding the first prong, Stefánsson committed tortious acts and breached in Florida. *See Louis Vuitton*, 736 F.3d at 1356 (relatedness prong "is easily satisfied" where direct causal relationship exists between defendant, forum, and claim). Regarding the second prong, Stefánsson purposefully availed himself in Florida by his continuous employment and earning wages in Florida. *See* Florida Paystubs. Stefánsson "deliberately has engaged in

8

significant activities within a state, or has created continuing obligations between himself and residents of the forum . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Regarding the third prong, Stefánsson lived in Florida for years, and NetApp sued there. *See Maurer Rides USA*, 2014 U.S. Dist. LEXIS 100989, at *15–16 (explaining not a "rare case" where fair play was violated because defendants routinely travel internationally).

For all these reasons, this Court has personal jurisdiction over Stefánsson.

## II.   Florida is the proper forum to adjudicate NetApp's claims.

The plaintiff's forum choice "should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Contrary to Stefánsson's faulty venue argument, a forum selection clause in a terminated employment contract that governed his employment in Iceland before the acts giving rise to this action is inapplicable. Stefánsson's misconduct occurred in the United States when employed by a different corporate entity in the United States. This lawsuit arose under a separate agreement (the PIIA) that expressly ***requires*** Florida law and contains no mandatory forum selection clause, so venue is proper in Florida. Stefánsson bears the burden on a *forum non conveniens* analysis to show that venue in Florida is somehow improper, but Stefánsson fails.

## A.   The PIIA and Florida law govern this dispute.

This dispute arose out of Stefánsson's breaches under the PIIA (not the Icelandic Employment Agreement) and his misappropriation of trade secrets under U.S. and Florida laws. No mandatory forum selection clause applies, and

9

Florida is the proper forum to adjudicate this dispute.

**1. The Icelandic Employment Agreement is only relevant to Stefánsson's employment in Iceland.**

Under Florida law and general contract principles, the plain meaning of a contract's language governs its interpretation. *Belize Telecom, Ltd. v. Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008). Under the plain language of the PIIA, the Release, and Icelandic Employment Agreement, the defunct forum selection clause cannot apply to this dispute.

The Icelandic Employment Agreement governed Stefánsson's employment in Iceland with NetApp's Iceland subsidiary. It was terminated by mutual consent when Stefánsson stopped working in Iceland and moved to the United States in 2022. *See* Release. In addition, Stefánsson ***expressly agreed*** to remain bound to the PIIA upon his transfer to U.S.-based NetApp, Inc. The PIIA states, "the terms of this Agreement [the PIIA] will continue to apply to me even if I transfer my employment at any time from my Employer to another subsidiary or affiliate of the Company[.]" *See* PIIA, Preamble. All activities that gave rise to this lawsuit happened in 2025 while (or shortly after) Stefánsson was working for NetApp, Inc. in Florida. NetApp has sued Stefánsson on the ***PIIA***, which has its ***own*** choice of law and venue provisions. The terminated Icelandic Employment Agreement is ***wholly irrelevant*** because all of the alleged activities occurred after the termination of the Icelandic Employment Agreement. And, the alleged resolution of this dispute does not require interpretation of that agreement. Stefánsson cannot overcome the unambiguous contractual language of the PIIA and Release

and pull this case out of Florida (where it belongs) and into Iceland.

NetApp sued Stefánsson under the PIIA and relies only upon the PIIA's provisions. Accordingly, this dispute does not involve the "construction, performance, interpretation and validity" of the Icelandic Employment Agreement, EA § 20.7, so the forum selection clause in the terminated agreement cannot apply to this dispute.

### 2. The PIIA is a separate contract and governs this dispute.

Contrary to Stefánsson's contention that the Icelandic Employment Agreement is a "master" agreement, Stefánsson's employment with NetApp's Iceland entity (and his subsequent continued employment with any other NetApp entity) was simply contingent upon Stefánsson's signing the PIIA. Far from a "master" agreement then, the Icelandic Employment Agreement is a localized employment agreement used by NetApp's Icelandic subsidiary to hire employees locally in Iceland to comply with local labor laws, such as collective union agreements. *See* Ex. E ("Maher Dec."), ¶¶ 2–4. And the fact that the Icelandic Employment Agreement expressly conditions employment upon signing the PIIA, *see* EA §§ 14.3, 19.2, does not meld two contracts into one under Eleventh Circuit case law because "[c]ontracts are often conditioned upon the completion of totally separate agreements." *See In re Gardinier, Inc.*, 831 F.2d 974, 977–78 (11th Cir. 1987). Nor does this meld two contracts under Icelandic law. Ex. C ("Hjordis Decl."), ¶¶ 11–13.

Whether two documents constitute one contract depends upon the parties'

intention. *In re Gardinier,* 831 F.2d at 976. "[T]he actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Rose v. M/V "Gulf Stream Falcon,"* 186 F.3d 1345, 1350 (11th Cir. 1999). To determine whether parties intend for two documents to constitute separate agreements, courts consider the nature of the agreements, the consideration for the agreements, the obligations set forth in the agreements, and whether the agreements are between different parties. *In re Gardinier*, 831 F.2d at 976. The PIIA and Icelandic Employment Agreement are separate agreements, and the PIIA governs this dispute for four reasons.

NetApp sued Stefánsson based on his misconduct occurring in 2025, which constituted breaches of the ***PIIA***—not the Icelandic Employment Agreement which has been terminated since 2022. The PIIA is an agreement that all NetApp employees sign with the parent company (NetApp, Inc.), whether or not they have employment contracts or are at-will employees. Ex. D ("Powell Dec."), ¶¶ 2–4. On the other hand, the Icelandic Employment Agreement is a local agreement that NetApp's international subsidiaries sign with international employees to comply with local labor law. Maher Dec., ¶¶ 2–4.

***First***, the PIIA is a separate contract because it has its own choice of law provision, which provides that the PIIA "shall be interpreted and enforced in accordance with the laws of the state or country of the location in which I work as of the date of the occurrence of the breach for which enforcement of [the PIIA] is sought." PIIA, § O. This choice of law provision—which requires ***Florida*** law

12

because Stefánsson was employed by NetApp in Florida when Stefánsson's breaches occurred—is enforceable in Florida. *Forzley v. AVCO Corp. Elecs. Div.*, 826 F.2d 974 (11th Cir. 1987) ("Under Florida law, 'When the parties to a contract have indicated their intention as to the law which is to govern, it will be governed in accordance with the intent of the parties.'" (quoting *Dep't of Motor Vehicles v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. Dist. Ct. App. 1981)). And unlike the Icelandic Employment Agreement, the PIIA has a permissive (not mandatory) consent-to-jurisdiction-and-venue provision. PIIA, § O. *See Florida Polk County v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 n.8 (11th Cir. 1999).

**Second**, the PIIA expressly survives the termination of the Icelandic Employment Agreement. *See* EA § 12.2 (stating that the obligations under the PIIA "are perpetual, **and shall survive termination** of the [Icelandic Employment] Agreement and of [Stefánsson's] employment with the Company" (emphasis added)). And the PIIA is drafted to apply regardless of the NetApp entity by which one is employed: "the terms of **this Agreement** [the PIIA] will **continue to apply to me even if I transfer my employment** at any time from my Employer to another subsidiary or affiliate of the Company (as defined below)." PIIA, Preamble (emphases added). Finally, Stefánsson further agreed in the PIIA "that any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement." PIIA, § M. On the other hand, the Icelandic Employment Agreement contains no language suggesting that it survives termination of Stefánsson's employment in Iceland, nor would such

13

language have made sense given that the Agreement governed employment in Iceland. And the Icelandic Employment Agreement cannot apply to this dispute because this dispute is not about Stefánsson's performance under it. Instead, this dispute concerns Stefánsson's misappropriation of trade secrets and his breaches under the PIIA since early 2025, all of which happened after Stefánsson's termination of his employment from NetApp's Icelandic subsidiary in 2022.

The plain language of the agreements demonstrates that the parties intended the two agreements to be separate agreements, with the PIIA surviving the termination of Stefánsson's employment with NetApp's Icelandic entity. *See In re Gardinier*, 831 F.2d at 976 ("[T]he intention of the parties is the governing principle in contract construction . . . ." (citations omitted)).

***Third***, the PIIA and the Icelandic Employment Agreement involve different corporate entities. *Siech v. Hobbs Grp., LLC*, No. 1:04-CV-3199-CC, 2005 WL 8155045, at *6 (N.D. Ga. Nov. 8, 2005), *aff'd*, 198 F. App'x 840 (11th Cir. 2006) ("In order for two (2) agreements to be construed together, the parties and the subject matter in both agreements must be the same."). The parties to the Icelandic Employment Agreement are Stefánsson and NetApp's Icelandic subsidiary. EA § 1.4. On the other hand, Stefánsson is bound by the PIIA no matter the NetApp entity by which he is employed. *See* PIIA, Preamble. The parties to the PIIA, then, are Stefánsson and the entity employing the employee. Because the agreements involve different parties, they are separate agreements. *Cf. Primo Orthopedics, LLC v. Hughston Orthopaedics, LLC,* No. 6:24-CV-619-ACC-DCI, 2024 WL

4554695, at *19 (M.D. Fla. June 6, 2024) (refusing to regard "the agreements as mutually dependent" when "[t]he parties to the agreements [were] not the same parties").

*Fourth*, the PIIA and the Icelandic Employment Agreement impose different obligations. *See, e.g., In re Gardinier*, 831 F.2d at 976 ("the parties intended to make two separate contracts" because "the nature and purpose of the agreements are different"). The Icelandic Employment Agreement outlines *NetApp's Icelandic subsidiary's obligations vis-à-vis Stefánsson* while he performs work in Iceland, *see* EA §§ 2–11, which makes sense for a local employment contract. On the other hand, the PIIA consists only of *Stefánsson's obligations to any NetApp company*. The two agreements clearly serve different purposes, and one is not subsumed within the other.[3]

### 3. The forum selection clause in the terminated Icelandic Employment Agreement does not apply to this dispute.

The cases Stefánsson cites for the proposition that the PIIA and the Icelandic Employment Agreement constitute one "master" agreement are inapt. In *Management Computer Controls*, the court considered whether a mandatory forum selection clause contained in a *license* agreement applied to a suit on a *sales* contract that did not contain the clause. *Mgmt. Comput. Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627 (Fla. Dist. Ct. App. 1999). The court

---

[3] Insofar as Stefánsson suggests NetApp has sued under the restrictive covenants in the Icelandic Employment Agreement, his argument fails because those covenants expired one year after Stefánsson's Icelandic employment ended (i.e., December 31, 2023). *See* Release; *see* EA, §§ 13.1, 14.1. Of course, NetApp does not sue under these expired restrictive covenants, only the PIIA.

15

noted that the sales contracts "contain language that specifically expresses the parties' intent to be bound by the license agreement packaged with the software." *Id.* at 632. On that basis, the court held that the forum selection clause in the license agreement applied to suits on the sales contract. *Id.* at 633. Not so here. NetApp sues for the misappropriation of trade secrets and for breaches of the ***PIIA***, which does not incorporate the Icelandic agreement.

Failing to square the plain language of the PIIA, the Icelandic Employment Agreement, and the Release with his atextual assertion that the PIIA and the Icelandic Employment Agreement constitute one "master" agreement, Stefánsson attempts to rely upon a forum selection clause in a dispute over an entirely different agreement. But Stefánsson's cases do not help him. In *Sensify*, the court explained that a forum selection clause survives terminated agreement when claims require interpretation of the terminated contract. *Sensify (US) Inc. v. Intelligent Telematics N. Am., Inc.*, 2017 WL 1541424, at *3 (S.D. Fla. Apr. 28, 2017). But NetApp's claims require interpretation only of the PIIA.

Stefánsson's other cases are equally unavailing. In *Cincinnati Insurance*, the plaintiff sued on a terminated subcontract agreement containing a forum selection clause, and the court held that the clause survived termination of the agreement ***for suits on that agreement***. *United States v. Cincinnati Ins. Co.*, 2022 WL 1801193, at *7 (M.D. Fla. Mar. 25, 2022). But as explained above, NetApp sues on a separate contract. *Kava* serves Stefánsson no better. *Kava Culture Franchise Grp. Corp. v. Dar-Jkta Enters. LLC*, 2023 WL 3568598 (M.D. Fla. May 18, 2023).

16

There, the plaintiff sued on an agreement with a forum selection clause providing that "any lawsuit between the parties hereto shall be in the Lee County Court," and unsurprisingly, the court held that that clause governed a dispute on that agreement. *Id.* at *3. Here, the forum selection clause in the Icelandic Employment Agreement requires only that suits on ***it*** be resolved in Iceland. Plainly then, the forum selection clause cannot pull suits on the ***PIIA*** out of Florida.

## B.    **Stefánsson fails to carry his burden.**

Because no mandatory forum selection clause applies, and because the plaintiff's forum choice "should rarely be disturbed," *Gulf Oil Corp.*, 330 U.S. at 508, Stefánsson bears the burden on a *forum non conveniens* motion. *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009). He fails.

First, a court should not dismiss an action for *forum non conveniens* unless there is an adequate and available alternative forum. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). Second, a court should not dismiss unless the balance of the private and public interests weighs in favor of dismissal. *See id.* Third, a plaintiff must be able to reinstate its suit in the alternative forum without undue inconvenience or delay. *See id.* at 1310–11. "A defendant has the burden of persuasion as to all elements of a *forum non conveniens* motion[.]" *Id.* at 1311.

Stefánsson fails to carry his burden, at a minimum, on factors two and three. And because there is a "strong presumption against disturbing plaintiffs' initial forum choice" especially "when the plaintiffs are citizens, residents, or corporations of this country," dismissal is inappropriate. *SME Racks, Inc. v.*

*Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (reversing dismissal where court failed to afford deference to domestic plaintiff).

### 1. The public and private interest factors favor Florida.

Stefánsson cannot overcome the strong presumption in favor of a U.S. plaintiff's (NetApp's) choice of a U.S. forum. "A defendant invoking forum non conveniens with respect to a domestic plaintiff . . . 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1339 (11th Cir. 2020) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). "[T]o oust [] [NetApp] from [its] chosen domestic forum," Stefánsson must "offer '***positive evidence of unusually extreme circumstances***' and '***material injustice***.'" *Otto Candies*, 963 F.3d at 1346 (quoting *SME Racks*, 382 F.3d at 1101 (emphases added)). But he fails to **acknowledge** this burden—let alone offer "positive evidence of unusually extreme circumstances." *SME Racks*, 382 F.3d at 1101.

In any event, the private and public interest factors confirm that Florida is the right venue. Private interests include the parties' access to proof and witnesses, ability to compel testimony, and the enforceability of a judgment. *See Gulf Oil*, 330 U.S. at 508. Public interests include a sovereign's interest in deciding the dispute, the burdens of trial, and whether foreign law applies. *See id.* at 508–09.

"With respect to the private interests, courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum . . . ." *Otto Candies,* 963 F.3d at 1338. Stefánsson also voluntarily moved to Florida,

18

subjecting himself to the laws of the United States and Florida. Because of this, the locus of events, evidence, and witnesses is the United States. NetApp's witnesses are all in the United States, as are its digital records. In short, NetApp can prove each element of its case without reliance on evidence or witnesses outside the United States.[4] Naturally, because NetApp is a U.S. corporation, "these private factors would weigh in favor of [NetApp]." *Pierre-Louis*, 584 F.3d at 1059.

As to the public interest factors, NetApp is entitled to use its own country's laws in a forum in its own country to ensure the protection of its trade secrets. Aside from its contractual claims, NetApp brings claims under the Florida Uniform Trade Secrets Act and Defend Trade Secrets Act, so NetApp deserves the protection of American law in an American forum. *See Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002) ("There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction."). Stefánsson's reliance on the Icelandic Employment Agreement is a red herring because this dispute arose out of his activities while employed by NetApp in Florida, requiring Florida law, and Florida has an interest in ensuring businesses operating there have the protection of U.S. law. *See Gulf Oil*, 330 U.S. at 509 (local controversies should be decided locally).

---

[4] And due to modern technology, "the defendant's burden of proving hardship should be harder to meet." *Otto Candies*, 963 F.3d at 1349.

19

### 2. Reinstating suit in Iceland would cause NetApp undue prejudice.

A court assumes that "[w]hen the plaintiff has chosen the home forum . . . this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). NetApp's claims are not based on the Icelandic Employment Agreement and arise exclusively from Stefánsson's obligations under the PIIA while he was employed in the United States. Because Stefánsson's breaches occurred after December 31, 2022, while Mr. Stefánsson was employed by NetApp, Inc., in Florida, NetApp's claims cannot be brought under the terminated employment agreement before an Iceland court, which has no authority over Stefánsson's actions while employed by the U.S. entity. Hjordis Decl., ¶ 15. In addition, discovery and provisional relief mechanisms are limited in Iceland, but such mechanisms are critical in trade secrets cases. *Id.*, ¶¶ 20–21. Moreover, third-party discovery does not exist in Iceland. *Id.*, ¶ 24. In addition, NetApp's activities in Iceland do not matter for this analysis. *See Otto Candies,* 963 F.3d at 1340. In sum, the docket is more than 50 entries deep, this dispute requires Florida law, the facts and law dictate that Florida is the most convenient forum for this lawsuit, and NetApp would be unduly prejudiced if it were forced to file in Iceland.

### CONCLUSION

For these reasons, this Court has personal jurisdiction over Stefánsson and Florida is the proper venue. Accordingly, this Court should deny the Motion.

Dated:    December 23, 2025          Respectfully submitted,

*/s/ Nathan M. Berman*
Nathan M. Berman
FBN: 0329230
nberman@zuckerman.com
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Blvd., Suite 1200
Tampa, Florida 33602
813-221-1010
813-223-7961 (Fax)

Katherine Vidal
California Bar No. 194971
KVidal@winston.com
WINSTON & STRAWN LLP
1901 L Street,
N.W. Washington, D.C. 20036-3506
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
WINSTON & STRAWN LLP
255 Shoreline Drive, Suite 520
Redwood City, California 94065
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

John C.C. Sanders, Jr.
Texas Bar No. 24057036
JSanders@winston.com
Chase Cooper*
Texas Bar No. 24087342
CCooper@winston.com
Jennifer Moroney Iorio
Texas Bar No. 24138582
JIorio@winston.com
Matthew J. Wurst
MWurst@winston.com
Texas Bar No. 24137303
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, Texas 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

*(Admitted pro hac vice)*

*\*PHV application forthcoming*

*Attorneys for Plaintiff NetApp, Inc.*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed this 23rd day of December, 2025, by CM/ECF which will provide notification to all attorneys of record.

/s/ Nathan M. Berman
Nathan M. Berman